IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DENISE K. WATSON, )
)
    Plaintiff, )
)
v. ) Civil Action No. 3:10CV174-HEH
)
UNITED CONSUMERS, INC., )
)
    Defendant. )

## MEMORANDUM OPINION
(Granting Defendant's Motion for Summary Judgment)

This is a civil action brought by Denise K. Watson against United Consumers, Inc., for multiple violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.* It is presently before the Court on Defendant's Motion for Summary Judgment (Dk. No. 9), filed on May 24, 2010. Both parties have filed extensive memoranda of law supporting their respective positions. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and argument would not aid in the decisional process. For the reasons stated herein, the Court will grant Defendant's Motion for Summary Judgment.

### I. BACKGROUND

On or before July 6, 2009,[1] Plaintiff Denise K. Watson ("Watson") incurred a medical debt with Commonwealth Radiology, P.C. ("Commonwealth"). Subsequently,

---

[1] The Complaint does not disclose the exact date of the medical procedure, but clearly implies that it preceded Plaintiff's bankruptcy filing.

on July 6, 2009, Watson filed for Chapter 7 Bankruptcy in the Eastern District of Virginia, Richmond Division, Bankruptcy Court ("Bankruptcy Court").[2] Originally, Commonwealth was not listed or scheduled on the list of creditors.[3] Commonwealth was later notified of Watson's bankruptcy on July 22, 2009, by Watson's attorney. On October 19, 2009, the Bankruptcy Court entered a discharge of Watson as debtor, pursuant to 11 U.S.C. § 727. In early December 2009, Commonwealth hired United Consumers, Inc. ("UCI"), a debt collection and recovery service, to recover Watson's delinquent balance.

On December 7, 2009, UCI sent a collection notice to Watson for the amount of $152.50. Four days later, upon being notified of Watson's discharge in bankruptcy, UCI ceased its collection efforts and closed its file. Watson, in response to UCI's collection letter, filed an adversary proceeding discharge claim against Commonwealth in the Bankruptcy Court.[4] In this action, Watson alleged that by sending the collection notice, Commonwealth was in violation of the discharge injunction.

On February 12, 2010, Watson and Commonwealth entered into a Settlement Agreement (the "Agreement"), resolving the adversary discharge action. Within the

---

[2] The parties did not give an exact date for Watson's bankruptcy. However, the record indicates that her bankruptcy occurred prior to the July 6, 2010.

[3] Plaintiff maintains that Commonwealth was inadvertently omitted from the list.

[4] *Watson v. Commonwealth Radiology, P.C.*, Case No. 10-03011-DOT.

Agreement, paragraph 2.b stated that Watson

> on behalf of her self, her predecessors, successors and assigns, hereby knowingly and voluntarily releases, remises and forever discharges Respondents [Commonwealth], *its current and former agents*, affiliates, attorneys, [and] representatives . . . from any and all costs, attorney fees, damages, claims, demands, obligations, liabilities, defenses, affirmative defenses, setoffs, counterclaims, actions, and *causes of action of whatsoever kind or nature, whether developed or undeveloped*, whether known or unknown, from the beginning of time up to and including the execution of this settlement agreement.

(Agreement ¶ 2.b.) [emphasis added].

This Agreement also contained an integration clause that provided, "this Settlement Agreement constitutes the entire agreement amongst the parties and supersedes all other prior agreements and understandings, both written and oral, amongst the parties, with respect to the subject matter hereof." (Agreement ¶ 12.)

One month later, on March 17, 2010, Watson filed a Complaint in this Court alleging that by sending the December 7, 2009 collection letter, UCI violated the FDCPA. Specifically, Watson claims that by serving as Commonwealth's debt collector, UCI committed violations of Sections 1692e, 1692e(2), 1692e(2)(a), 1692e(10), 1692f, and 1692f(1) of the FDCPA. Watson seeks statutory damages, attorney's fees, and costs, pursuant to 15 U.S.C. § 1692k(a).

On May 24, 2010, UCI filed its Motion for Summary Judgment. In their Motion, UCI asserts that by entering into the February 12, 2010 Agreement, Watson has fully released it, as an agent of Commonwealth, from any liability. In Watson's Brief in

Opposition to Defendant's Motion for Summary, she argues that the Agreement only pertained to the bankruptcy discharge violation rather the FDCPA violations claimed in the present Complaint.[5]

## II. ANALYSIS

### A. Motion for Summary Judgment

When evaluating a motion for summary judgment under Rule 56, the Court must construe all "facts and inferences to be drawn from the facts . . . in the light most favorable to the non-moving party. . . ." *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990). A court will grant summary judgment only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A genuine issue of material fact exists under Rule 56 "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion" and "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Nevertheless, where the record taken as a whole cannot lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial, and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v.*

---

[5] Watson failed to file a timely Brief in Opposition, however, without objection by UCI, she was granted leave to file her brief four days late.

4

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Under Virginia law, "[t]he scope of a release agreement, like the terms of any contract, is generally governed by the expressed intention of the parties." *First Sec. Fed. Sav. Bank, Inc. v. McQuilken*, 253 Va. 110, 113, 480 S.E.2d 485, 487 (1997). "Where parties contract lawfully and their contract is free from ambiguity or doubt, the agreement between them furnishes the law which governs them." *Charles E. Russell Co., v. Carroll*, 194 Va. 699, 703, 74 S.E.2d 685, 688 (1953). "Where language is unambiguous, it is inappropriate to resort to extrinsic evidence; an unamibiguous document should be given its plain meaning." *Great Falls Hardware Co. of Reston v. South Lakes Village Center Assoc.*, 238 Va. 123, 125, 380 S.E.2d. 642, 643 (1989). "The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and *courts are bound to say that the parties intended what the written instrument plainly declares.*" *Wilson v. Holyfield*, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984).

"In determining whether a person is the agent of another, it is necessary that he not only be subject to the latter's control, or right of control, with regard to the work to be done and the manner of performing it, but the work has to be done on the business of the principal or for his benefit." *Whitfield v. Whittaker Mem'l Hosp.*, 210 Va. 176, 181, 169 S.E.2d 563, 567 (1969). "Actual control, however, is not the test; it is the right to control which is determinative." *Id.* [internal citations omitted].

5

In this case, UCI asserts that it was fully released from liability under the February 12, 2010 Agreement between Watson and Commonwealth. UCI maintains that it was hired by Commonwealth as a debt collector, and in that capacity served as Commonwealth's agent. As a result, UCI insists that the terms of the Agreement release it from liability under the claims asserted in Watson's Complaint. Furthermore, UCI argues that because the December 7, 2009 collection letter was the basis of Watson's claim in the adversarial proceeding, the expressed intent of the Agreement was to release not only Commonwealth, but also UCI as Commonwealth's agent.

On the other hand, Watson contends that the Agreement's release provision merely applies to the bankruptcy discharge violation, not the FDCPA violations alleged in the Complaint. Under this somewhat strained reading of the Agreement, Watson argues that Commonwealth was the only party released from liability. Watson further offers evidence in an affidavit that Commonwealth's counsel expressly rejected the release of UCI from liability for an additional amount.

Paragraph 2.b of the Agreement states that Watson "voluntarily releases, remises and forever discharges Respondents, *its current and former agents*, affiliates, attorneys, [and] representatives . . . from any and all costs, attorney fees, damages, claims, demands, obligations, liabilities, defenses, affirmative defenses, setoffs, counterclaims, actions, and causes of action of whatsoever kind or nature, whether developed or undeveloped, whether known or unknown, from the beginning of time up to and including the

execution of this settlement agreement." (Agreement ¶ 2.b.) [emphasis added]. Thus, according to the language of the Agreement and Virginia law, if UCI is found to be a current or former agent of Commonwealth, it will be completely released from any claims or causes of action, of whatever kind, originating before the execution of the Agreement. This certainly would include both the bankruptcy discharge violation and the FDCPA violations. Therefore, even by construing all "facts and inferences to be drawn from the facts ... in the light most favorable to the non-moving party," this Court finds for several reasons, as a matter of law, that the claim against UCI is barred by the Agreement. *Miller*, 913 F.2d at 1087.

First, on the issue of agency, by sending a collection notification letter at Commonwealth's request, it appears that UCI was subject to both Commonwealth's "control, or right of control, with regard to the work to be done and the manner of performing it," and was working for Commonwealth's benefit. *Whitfield*, 210 Va. at 181. Moreover, other courts have held that a debt collector, such as UCI, functions as an agent for the purpose of collecting debts for its principal. *See Karnette v. Wolpoff & Abramson, L.L.P.*, 444 F. Supp. 2d 640, 646 (E.D. Va. 2006) ("debt collector may function as an agent for the specific purpose of collecting debts ...."); *see also Catencamp v. Cendant Timeshare Resort Group-Consumer Finance, Inc.*, 471 F.3d 780, 781 (7th Cir. 2006) (" 'debtor collector' is defined as a third party that assists or acts as an agent for the creditor ...."). For these reasons, this Court finds UCI was serving as an agent for the

purposes of this Agreement.

Second, it is undisputed that the Agreement arose from the same event subjecting UCI to liability in this case—the mailing of the December 7, 2009 collection letter. By including "current and former agents, affiliates, attorneys, [and] representatives" of Commonwealth as parties to be discharged, the language of the Agreement settled all claims involving parties implicated in the mailing of the collection letter to Watson. (Agreement ¶ 2.b.) In addition, by releasing Commonwealth and its agents "from any and all costs . . . claims . . . and causes of action of whatsoever kind or nature, whether developed or undeveloped, whether known or unknown, from the beginning of time up to and including the execution of this settlement agreement" the expansive terms of the Agreement clearly included the FDCPA violations alleged in Watson's Complaint. *Id.* Moreover, the integration clause, which superseded all other prior understandings amongst the parties, precludes extrinsic evidence that Commonwealth's attorney refused to include UCI in the Agreement. Therefore, because "courts are bound to say that the parties intended what the written instrument plainly declares" UCI must be released from liability under the terms of the Agreement. *Wilson*, 227 Va. at 187. [emphasis omitted]. Finding no other genuine issue for trial, Defendant is entitled to judgment as a matter of law and its Motion will be granted.

### III. CONCLUSION

For the foregoing reasons, the Court will grant the Defendant's Motion for

Summary Judgment, and Plaintiff's Complaint will be dismissed with prejudice.

An appropriate Order will accompany this Memorandum Opinion.

                                             /s/
                                   Henry E. Hudson
                                   United States District Judge

ENTERED this **14** day of **June, 2010**
Richmond, VA